IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARLOW HENRY, on behalf of the BSC
Ventures Holdings, Inc. Employee Stock
Ownership Plan, and on behalf of a class of all
other persons similarly situated,

              Plaintiff,

v.

WILMINGTON TRUST, N.A.,
BRIAN C. SASS, and
E. STOCKTON CROFT IV,

              Defendants.

Case No.

## COMPLAINT

Plaintiff Marlow Henry, by his undersigned attorneys, on behalf of the BSC Ventures

Holdings, Inc. Employee Stock Ownership Plan, and similarly situated participants in the Plan and

their beneficiaries, alleges upon personal knowledge, the investigation of his counsel, and upon

information and belief as to all other matters, as to which allegations he believes substantial

evidentiary support will exist after a reasonable opportunity for further investigation and

discovery, as follows:

## BACKGROUND

1.    Plaintiff Marlow Henry ("Plaintiff") brings this suit against Wilmington Trust,

N.A. ("Wilmington Trust"), the trustee for the BSC Ventures Holdings, Inc. Employee Stock

Ownership Plan (the "Plan") when the Plan acquired shares of BSC Ventures Holdings, Inc.

("BSC") in 2016, and against selling shareholders Brian C. Sass and E. Stockton Croft IV (the

"Selling Shareholders").

2.       Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who was vested in shares of BSC allocated to his account in the Plan.

3.       This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by Wilmington Trust when it caused the Plan to buy shares of BSC for more than fair market value in 2016 and other relief.

4.       As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.       At all relevant times, BSC was a privately held company and a party in interest to the Plan. On January 14, 2016, the Plan purchased 809,892 shares of BSC's common stock, representing 100% of the outstanding shares, for $50 million, which was financed by $3.45 million cash and a note payable to BSC of $46.55 million bearing a 2.65% interest rate with a final payment due December 2045 (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time, BSC became 100% employee owned.

6.       Wilmington Trust represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf.

7.       The ESOP Transaction allowed the Selling Shareholders to unload their interests in BSC above fair market value and saddle the Plan with tens of millions of dollars of debt over a 30-year repayment period to finance the Transaction. Wilmington Trust failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiff.

2

8.      Brian C. Sass and E. Stockton Croft IV, the Selling Shareholders, are parties in interest who sold shares in the ESOP Transaction. The Selling Shareholders are liable under ERISA for participating in the prohibited transactions and in Wilmington Trust's breaches of fiduciary duty.

9.      Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by him and similarly situated participants, resulting from Wilmington Trust's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA, and breaching its fiduciary duties under ERISA, and the Selling Shareholders' participation in these violations.

## JURISDICTION AND VENUE

10.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require Wilmington Trust to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against Wilmington Trust and the Selling Shareholders, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

11.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant Wilmington Trust resides or may be found in this District, and because some of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

13.     Plaintiff Marlow Henry is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on January 1, 2015. Plaintiff Henry resides in Baltimore, Maryland. He was a Baler at BSC. He was employed by BSC from January 2012 to January 2019. He was vested by the Plan's terms in shares of BSC in his Plan account.

14.     Defendant Wilmington Trust is a trust company chartered in Delaware. Its headquarters is at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust is a subsidiary of M&T Bank Corporation. M&T Bank Corporation is headquartered in Buffalo, New York.

15.     Wilmington Trust was the Trustee of the Plan at the time of the ESOP Transaction. Wilmington Trust was a "fiduciary" under ERISA because it was the Trustee. As Trustee, Wilmington Trust had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on the Plan's behalf. Wilmington Trust was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at all times that it was Trustee of the Plan.

16.     Wilmington Trust's power and authority does not include the power and authority to interpret the terms of the written Plan document.

17.     Defendant Brian C. Sass was a selling shareholder in the ESOP Transaction. Mr. Sass was a founder of BSC, and the Chairman of the Board of Directors, President and Chief Executive Officer (CEO) of the company before and after the ESOP Transaction. Mr. Sass was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), as a BSC director and officer at the time of the ESOP Transaction.

18.    Defendant E. Stockton Croft IV was a selling shareholder in the ESOP Transaction. Mr. Croft was a founder of BSC and a Director of the company before and after the ESOP Transaction. Mr. Croft was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), as a BSC director at the time of the ESOP Transaction.

19.    Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Brian C. Sass and E. Stockton Croft IV were 10 percent or more shareholders of BSC at the time of the ESOP Transaction. As such, they were parties in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction.

## FACTUAL ALLEGATIONS

20.    Headquartered in Roanoke, Virginia, BSC bills its operating subsidiaries—Double Envelope, Convertagraphics, and Champion Printing—as market leaders in the transactional and direct mail industries. BSC is a custom envelope manufacturer and web offset printer producing envelopes, bind-in order forms, mailers, and specialty packaging for the catalog, direct mail, and statement processing industries. BSC produces more than seven billion custom envelopes per year. BSC has approximately 450 employees, with locations in Baltimore, Maryland; Cincinnati, Ohio; Gainesville, Florida; Angola, Indiana; and Roanoke, Virginia. BSC was at all times a private company. There is and was no public market for BSC stock.

21.    BSC Ventures was formed as BSC Enterprises in 1999 by Brian C. Sass and E. Stockton Croft IV to acquire the assets of Techno-Aide from National Service Industries. In January 2001, BSC acquired the assets of Double Envelope, Convertagraphics, and Diversified Assembly. BSC later sold Techno-Aide and Diversified Assembly. In October 2006, BSC acquired direct mail printer Champion Printing, Inc. In May 2010, BSC acquired Oles Envelope

Corporation, now Double Envelope Maryland. In December 2010, BSC acquired Wolfe Envelope Corporation, now Double Envelope Indiana. In April 2013, BSC Ventures acquired Florida Envelope Company, which was integrated with Double Envelope Florida.

22.     BSC is headquartered at 7702 Plantation Road, Roanoke, VA 24019-3225.

23.     BSC is an S corporation. BSC stock is not readily tradable on an established securities market.

24.     BSC adopted the Plan effective January 1, 2015, as the BSC Ventures Holdings, Inc. Profit Sharing Plan. The Plan was subsequently amended and restated as the BSC Ventures Holdings, Inc. Employee Stock Ownership Plan effective October 1, 2015.

25.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

26.     BSC identified the Plan as intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of BSC.

27.     The Plan's principal asset was BSC stock at all times since the ESOP Transaction.

28.     The Plan is an individual account plan under which a separate individual account was established for each participant.

29.     BSC is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

30.     Employees of BSC and its subsidiaries participate in the Plan.

31.     BSC is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

32.     The Plan's Forms 5500 report at Part II Lines 2a & 3a that BSC is the Plan's administrator.

33.     BSC is and was an ERISA fiduciary to the Plan as its administrator.

34.     BSC is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

35.     BSC appointed Wilmington Trust as Trustee of the Plan. As Trustee, Wilmington Trust had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for BSC stock.

36.     As Trustee for the Plan, it was Wilmington Trust's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and BSC, including acquisitions of BSC stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

37.     On January 14, 2016, the Plan purchased from the Selling Shareholders 809,892 shares of BSC common stock for $50,000,000.

38.     At that time, BSC became 100% employee owned.

39.     The Plan purchased the BSC shares using the proceeds of a note payable to BSC, dated January 14, 2016, in the amount of $46,545,758. The note required annual principal installments of $1,551,525 plus interest at 2.65% with payments beginning December 31, 2016. The final payment, including any unpaid interest, is due December 2045.

40.     As of the Plan's most recent Form 5500 Annual Return/Report of Employee Benefit Plan, for 2017, the Internal Revenue Service had not issued a determination that the Plan is qualified under Internal Revenue Code (IRC) Section 401, 26 U.S.C. § 401, or that it is an employee stock ownership plan (ESOP) under ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6).

41.     The Selling Shareholders were the shareholders of BSC stock at the time of the ESOP Transaction.

42.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. BSC provided financial projections to Wilmington Trust for the valuation for the ESOP Transaction. The financial projections were unreasonably optimistic, and the Selling Shareholders knew or should have known that this was the case.

43.     The Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction, as 10 percent or more shareholders of BSC, directly or indirectly, and/or as directors of BSC or persons with powers or responsibilities similar to directors, and/or as officers of BSC or persons with powers or responsibilities similar to officers, and/or as employees of BSC.

44.     The Schedule H, Line 4i -Schedule of Assets (Held At End of Year) to the Plan's Forms 5500 Annual Return/Report for plan years ending December 31, 2016 and December 31, 2017, reports in column (a) that BSC is a party in interest to the Plan.

45.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan did not receive a discount for lack of control and paid a control premium for BSC even though the Plan did not obtain control over BSC upon its purchase of the Company, as the Selling Shareholders continued to control the company. After the ESOP Transaction, the Selling Shareholders retained control of BSC with Brian C. Sass, E. Stockton Croft IV, and their appointees or proxies maintaining positions as BSC directors and/or officers. Selling Shareholders who held warrants had rights to designate members of the BSC board of directors. Application of

a control premium was an incorrect valuation methodology. The Plan therefore overpaid for BSC stock.

46.     As Trustee, Wilmington Trust is liable for causing the Plan to pay more than fair market value for BSC stock as a result of the failure to receive a discount for lack of control, the payment of a control premium where previous owners retained control of BSC, and/or other factors in Wilmington Trust's decision to purchase BSC stock for the Plan the ESOP Transaction.

47.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Wilmington Trust did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. Wilmington Trust's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for BSC stock in the ESOP Transaction due to Wilmington Trust's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the valuation of BSC stock in the ESOP Transaction faulty.

48.     The U.S. District Court for the Eastern District of Virginia decided a case with the same defendant (Wilmington Trust); same kind of transaction (a leveraged ESOP transaction); and same lousy outcome for participants. *See Brundle v. Wilmington Trust N.A.*, 241 F. Supp. 3d 610 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019). The *Brundle* court found that Wilmington Trust has a "tendency to rubber stamp whatever Constellis [the plan's sponsor] and SRR [valuator Stout Risius Ross] put in front of it." 241 F. Supp. 3d at 642. As Wilmington Trust's Assistant

Vice President and Fiduciary Services Sub-Committee ("FSSC") member Greg Golden testified, Wilmington Trust does a lesser level of due diligence as an ESOP trustee than does a so-called "real world buyer" of a multimillion-dollar company. *Id.* at 637. Following trial, the *Brundle* court ruled that Wilmington Trust caused a prohibited transaction by failing to ensure that the plan paid no more than adequate consideration for company stock and "damaged the ESOP by agreeing to overpay $29,773,250.00 for the stock." *Id.* at 649. Plaintiff alleges the same thing happened here.

49.     Incentives to Wilmington Trust to act in favor of the Selling Shareholders in the ESOP Transaction included the possibility of business from sellers of companies who understood that Wilmington Trust believed a lesser degree of due diligence was needed for ESOP purchases of businesses than for non-ESOP-buyers' purchases of businesses, which Wilmington Trust distinguished as "real world" transactions, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

50.     Wilmington Trust is liable to the Plan for the difference between the price paid by the Plan and the actual value of BSC shares at the time of the ESOP Transaction.

51.     The Selling Shareholders are liable to the Plan to repay the difference between the price they received and the actual value of BSC shares at the time of the ESOP Transaction.

52.     Wilmington Trust has received consideration for its own personal account from BSC for its services in the ESOP Transaction in the form of fees, under a contract made when the Selling Shareholders owned BSC.

53.     Wilmington Trust's regular practice is to include an indemnification agreement in its engagement agreements to provide services as the transactional trustee in ESOP stock purchase transactions. One such agreement was a trial exhibit in *Brundle v. Wilmington Trust N.A.*

54.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Pursuant to Wilmington Trust's engagement agreement, BSC, at a time that it was owned by the Selling Shareholders, agreed to indemnify Wilmington Trust as Plan Trustee in connection with the ESOP Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation. The indemnification agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406.

55.     The indemnification agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because Wilmington Trust violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

56.     Payment by BSC of millions of dollars of attorneys' fees, costs and litigation expenses to Wilmington Trust necessarily would adversely impact BSC's equity value and therefore the value of Plan assets. Direct payment or reimbursement of Wilmington Trust's defense costs by BSC, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

57.     Advancing of millions of dollars in attorneys' fees, costs and litigation expenses to Wilmington Trust necessarily would adversely impact BSC's equity value and therefore the value of Plan assets even if Wilmington Trust is eventually ordered to reimburse BSC. The indemnification agreement does not require payment of interest or otherwise account for the time value of money.

## CLAIMS FOR RELIEF

## COUNT I

### Causing and Engaging in Prohibited Transactions Forbidden by
### ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against Wilmington Trust

58.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

59.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Wilmington Trust, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here BSC stock, with a party in interest, here the Selling Shareholders Brian C. Sass and E. Stockton Croft IV, as took place in the ESOP Transaction.

60.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Wilmington Trust from causing the Plan to borrow money from a party in interest, here BSC, as took place in the ESOP Transaction.

61.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Wilmington Trust from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholders Brian C. Sass and E. Stockton Croft IV, of any assets of the Plan, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for BSC stock and in continuing payments on the loan.

62.     The stock and loan transactions between the Plan and the parties in interest were authorized by Wilmington Trust in its capacity as Trustee for the Plan.

63.     Wilmington Trust caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

64.     ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any

consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

65.     Wilmington Trust caused the Plan to acquire BSC stock from the Selling Shareholders above fair market value and with the proceeds of a loan that was used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though Wilmington Trust was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

66.     Wilmington Trust received consideration for its own personal account from BSC—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

67.     Wilmington Trust caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

68.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

69.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

70.     Wilmington Trust has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Wilmington Trust

71.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

72.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

73.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

74.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

75.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

76.     Wilmington Trust was required to undertake an appropriate and independent investigation of the fair market value of BSC stock in January 2016 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the BSC stock purchased by the Plan.

77.     Wilmington Trust breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

78.     Wilmington Trust has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B),
### 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against Wilmington Trust

79.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

80.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve Wilmington Trust, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I claim here.

81.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

82.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

83.     The indemnification agreement purports to provide payment or reimbursement for the benefit of Wilmington Trust for its losses, costs, expenses or other damages, including but not limited to attorney's fees.

84.     To the extent that the indemnification agreement attempts to relieve Wilmington Trust of its responsibility or liability to discharge its duties under ERISA, or attempts to have BSC (a Plan-owned company) and thereby the Plan be responsible for Wilmington Trust's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

85.     To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

86.     As a result of the foregoing, should it be held liable under the preceding Count I, Wilmington Trust should be ordered to disgorge any indemnification payments made by BSC and/or the Plan, plus interest.

## COUNT IV

**Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3), Against Brian C. Sass and E. Stockton Croft IV**

87.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

88.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

89.     The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

90.     As a result of the prohibited transactions described above, the Selling Shareholders Brian C. Sass and E. Stockton Croft IV received Plan assets in payments above fair market value for their BSC stock.

91.     The Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

92.     The Selling Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their BSC stock in the ESOP Transaction, (3) that Wilmington Trust was a fiduciary to the Plan, (4) that the ESOP Transaction was for above fair market value, (5) that Wilmington Trust caused the Plan to engage in transactions prohibited under ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b), (6) that Wilmington Trust breached its fiduciary duties under ERISA, and (7) that the true purpose of the ESOP Transaction was to benefit the Selling Shareholders.

93.     As directors of BSC, as Selling Shareholders, and also for Defendant Sass as an officer of BSC, Defendants Brian C. Sass and E. Stockton Croft IV were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction with parties in interest. As parties in interest, the Selling Shareholders are liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

94.     The Selling Shareholders have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

95.     The Selling Shareholders are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## CLASS ACTION ALLEGATIONS

96.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the BSC Ventures Holdings, Inc. Employee Stock Ownership Plan (the "Plan") and the beneficiaries of such participants as of the date of the 2016 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold the stock of BSC Ventures Holdings, Inc. ("BSC") to the Plan in January 2016, and their immediate families; the directors and officers of BSC and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

97.     The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's

most recent Form 5500 filing reports that as of December 31, 2017, there were 423 participants in the Plan, including deceased participants whose beneficiaries were receiving or entitled to receive benefits.

98.     Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    i.   Whether Wilmington Trust served as Trustee in the Plan's acquisition of BSC stock;

    ii.   Whether Wilmington Trust was an ERISA fiduciary of the Plan;

    iii.   Whether Wilmington Trust caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase BSC stock and take loans from parties in interest;

    iv.   Whether Wilmington Trust engaged in a good faith valuation of the BSC stock in connection with the ESOP Transaction;

    v.   Whether Wilmington Trust caused the Plan to pay more than fair market value for BSC stock;

    vi.   Whether Wilmington Trust engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

    vii.   Whether Wilmington Trust engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

    viii.   Whether Wilmington Trust breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of BSC stock in January 2016;

    ix.   Whether BSC was a party in interest;

    x.   Whether the Selling Shareholders were parties in interest;

    xi.   Whether Brian C. Sass and E. Stockton Croft IV, as parties in interest, participated in the prohibited transactions;

    xii.   The amount of losses suffered by the Plan and its participants as a result of Wilmington Trust's and the Selling Shareholders' ERISA violations; and

    xiii.   The appropriate relief for Wilmington Trust's and the Selling Shareholders' violations of ERISA.

99.    Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of his Plan account because the Plan paid above fair market value and took on excessive loans for BSC stock, resulting in his being allocated fewer shares of stock, and he continues to suffer such losses in the present because Wilmington Trust failed to correct the overpayment by the Plan.

100.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

101.    Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Wilmington Trust, and/or because

adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

102.    In the alternative, class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Wilmington Trust has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Wilmington Trust's violations of ERISA.

103.    The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.    Declare that Defendant Wilmington Trust caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.    Declare that Defendants Brian C. Sass and E. Stockton Croft IV engaged in a prohibited transaction with the Plan in violation of ERISA;

C.    Declare that Defendant Wilmington Trust breached its fiduciary duties under ERISA to the Plan and the class members;

D.    Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it or he has made through use of assets of the Plan;

E.      Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

F.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

G.      Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendant Wilmington Trust's breaches of ERISA;

H.      Declare that the indemnification agreement between Defendant Wilmington Trust and BSC violates ERISA § 410, 29 U.S.C. § 1110;

I.       Order Defendant Wilmington Trust to reimburse BSC for any money paid by BSC under any indemnification agreement between Wilmington Trust and BSC, plus interest;

J.       Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K.      Order Defendant Wilmington Trust to disgorge any fees it received in conjunction with its services as Trustee for the Plan in the ESOP Transaction as well as any earnings and profits thereon;

L.       Order Defendants to pay prejudgment and post-judgment interest;

M.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named

Plaintiff as class representative and his counsel as class counsel; and

N.    Award such other and further relief as the Court deems equitable and just.

Dated:    October 10, 2019

**BAILEY & GLASSER LLP**

Gregory Y. Porter (*pro hac vice* to be filed)
Ryan T. Jenny (*pro hac vice* to be filed)
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

**FEINBERG, JACKSON,
WORTHMAN & WASOW LLP**

Daniel Feinberg (*pro hac vice* to be filed)
Todd Jackson (*pro hac vice* to be filed)
2030 Addison Street, Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Facsimile: (510) 269-7994
dan@feinbergjackson.com
todd@feinbergjackson.com

**BAILEY & GLASSER LLP**

*/s/ David A. Felice*
David A. Felice (#4090)
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE  19808
Telephone: (302) 504-6333
Facsimile: (302) 504-6334
dfelice@baileyglasser.com

*Attorneys for Plaintiff*