IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARLOW HENRY, on behalf of the BSC Ventures Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, ) ) ) ) ) | |
| Plaintiff, ) ) | |
| ) | C.A. No. 19-1925 (MN) |
| v.   ) ) | |
| WILMINGTON TRUST, N.A., BRIAN C. SASS, and E. STOCKTON CROFT IV, ) ) ) | |
| Defendants.   ) | |

**<u>MEMORANDUM OPINION</u>**

David A. Felice, BAILEY & GLASSER, LLP, Wilmington, DE; Gregory Y. Porter, Ryan T. Jenny, Patrick O. Muench, BAILEY & GLASSER, LLP, Washington, DC; Daniel Feinberg, Todd Jackson, FEINBERG, JACKSON, WORTHMAN & WASOW LLP, Berkeley, CA – Attorneys for Plaintiff

Albert H. Manwaring, Kristen A. Zeberkiewicz, MORRIS JAMES LLP; Michael J. Prame, Sarah M. Adams, Elizabeth L. Woods, GROOM LAW GROUP, CHARTERED, Washington, DC – Attorneys for Defendant Wilmington Trust, N.A.

Art C. Arnailla, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C., Wilmington, DE; Mark A. Nebrig, Kristen J. Kenley, MOORE & VAN ALLEN PLLC, Charlotte, NC – Attorneys for Defendants Brian C. Sass and E. Stockton Croft IV

September 10, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

On October 10, 2019, Plaintiff Marlow Henry ("Plaintiff")[1] filed this action under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for purported losses suffered by the BSC Ventures Holdings, Inc. Employee Stock Ownership Plan ("the Plan")[2] and its participants caused by Wilmington Trust when it caused the Plan to buy shares of BSC Ventures Holdings, Inc. ("BSC") for more than fair market value in 2016 and other relief. (D.I. 1). On December 20, 2019, Defendants Wilmington Trust, N.A, Brian C. Sass and E. Stockton Croft IV (collectively "Defendants") moved to dismiss Plaintiff's complaint pursuant to a mandatory arbitration clause. (D.I. 11). The motion has been fully briefed. (D.I. 12, 13, 19, 20, 26, 28, 31, 32). On October 23, 2020, the Court heard argument. For the following reasons, Defendants' motion will be DENIED.

**I.     BACKGROUND**

Plaintiff was an employee of BSC from January 2012 through January 2019. (D.I. 1 ¶ 13). In 2015, BSC adopted the Plan. (D.I. 1 ¶ 24). Since that time, Plaintiff has been a participant in the Plan. (D.I. 1 ¶ 13). On January 14, 2016, the Plan purchased BSC common stock from Defendants Sass and Cross and others ("the ESOP[3] Transaction") (D.I. 1 ¶¶ 5-9). Wilmington Trust served as Trustee to the Plan in connection with the ESOP Transaction. (D.I. 1 ¶ 6). It is

---

[1]  The action was filed by Plaintiff on behalf of the BSC Ventures Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated. Plaintiff has not moved for class certification.

[2]  The parties agree that the Plan is a pension benefit plan within the meaning of ERISA (D.I. 1 ¶¶ 13, 25; D.I. 12 at 2).

[3]  "ESOP" refers to an Employee Stock Ownership Plan.

the ESOP Transaction that is the basis for this litigation.  Plaintiff alleges that the Plan overpaid for the stock and that the ESOP Transaction was prohibited by ERISA §§ 406(a)(1)(A) and 406(a)(1)(D).

The Plan is administered pursuant to a document called the "Amendment and Restatement of the BSC Acquisition Sub, LLC Profit Sharing Plan to Become A Part of the BSC Ventures Holdings, Inc. Employee Stock Ownership Plan" ("the Plan Document").  (D.I. 13-1).  Since the ESOP Transaction, BSC has amended the Plan twice.  (D.I. 12 at 2).  On April 21, 2017, BSC adopted Amendment Number One to the Plan Document, which added Section 14 titled "ERISA Arbitration and Class Action Waiver" ("the 2017 Arbitration Provision").  (*Id.*; D.I. 13-2).  Section 14 begins:

> **Section 14.01  Arbitration Requirement and Procedure.**  Subject to and without waiver of full compliance with the Plan's claims procedures as described in Section 8.10, which to the extent applicable, must be exhausted with respect to any claim before any arbitration pursuant to this Section 14.01, all Covered Claims must be resolved exclusively pursuant to the provisions of this Section 14.01 (the "Arbitration Procedure").

D.I. 13-2, § 14.01.  It then continues:

> Any claim made by or on behalf of a Covered Employee, Participant or Beneficiary (a 'Claimant') which arises out of, relates to, or concerns this Plan, the Trust Agreement, or the Trust, including without limitation, any claim for benefits under the Plan, Trust Agreement, or Trust; any claim asserting a breach of, or failure to follow, the Plan or Trust; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the Code (collectively, 'Covered Claims') shall be resolved exclusively by binding arbitration[.]

(D.I. 13-2, §  14.0l(a)).

2

On January 1, 2019, the Plan adopted "Amendment Number Two to the Plan Document" ("the 2019 Arbitration Provision). The 2019 Arbitration Provision is substantially similar to the 2017 Arbitration Provision and modified the "Covered Claims" language of the 2017 Arbitration Provision as follows (language that was deleted is shown in italics, language that was added is shown as underlined):

> Any claim made by or on behalf of a *Covered Employee* <u>current or former employee, a current or former Participant or current or former Beneficiary or by or on behalf of the Plan, the Trust or under the Trust Agreement </u>(a "Claimant") which arises out of, relates to, or concerns this Plan, the Trust Agreement, or the Trust, including without limitation, any claim for benefits under the Plan, Trust Agreement or Trust; any claim asserting a breach of, or failure to follow, <u>the terms of</u> the Plan <u>or Trust Agreement</u> or Trust.[4]

The 2017 and the 2019 Arbitration Provisions also contain a waiver of the Plan participants' right to bring a representative action ("Class Action Waiver"). The waiver in the 2017 Arbitration Provision states:

> All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Covered Employee, Participant or Beneficiary other than the Claimant.

(D.I. 13-2, § 14.0l(b)).[5]

---

[4] Under the 2017 and 2019 Arbitration Provisions, "arbitration proceedings shall be held in Roanoke, Virginia, or at such other place as may be selected by mutual agreement of the parties."

[5] The 2019 Arbitration Provision modified the Class Action Waiver to refer to an "individual or entity" instead of "Covered Employee, Participant, or Beneficiary." (D.I. 13-3, §14.01(b)).

3

The Class Action Waiver in both Arbitration Provisions also states: "Any dispute or issue as to the applicability or validity of this [section] (the 'Class Action Waiver') shall be determined by a court of competent jurisdiction." (*Id.*).

## II. LEGAL STANDARD

### A. Standing

To bring an ERISA lawsuit a plan participant must meet the standing requirements of the statute as well as those of Article III. *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 455 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)) "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (internal quotations omitted); *see also Acrisure Holdings, Inc. v. Frey*, No. CV 18-1514-RGA-MPT, 2019 WL 1324943, at *5 (D. Del. Mar. 25, 2019) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)).

Here, the parties agree that the challenge is a facial challenge to standing,[6] which "attacks the complaint on its face without contesting its alleged facts" and "is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016); *Aichele*, 757 F.3d at 358. Thus, the Court must "accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *In re Schering Plough*, 678 F.3d at 243 (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). The Third Circuit has set forth a three-step approach for this analysis:

> "First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that,

---

[6] *See* D.I. 12 at 6, D.I. 19 at 6.

4

>because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (internal quotation marks and alterations omitted) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir.2010)).

To meet the constitutional minimum of Article III standing, a plaintiff must establish three elements: "a concrete and particularized invasion of a legally protected interest," a "causal connection between the injury and the conduct complained of," and "a likelihood that the injury will be redressed by a favorable decision." *Hartig*, 836 F.3d at 269 (internal quotation marks omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Article III's injury requirement "is not Mount Everest." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). Rather, the constitution affords a "generous" understanding of injury, "requiring only that [a] claimant allege some specific, identifiable trifle of injury." *Id.*

In the context of ERISA claims, a plaintiff bringing an action on behalf of a plan must allege injury to his own plan account. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007) ("Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing."), *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) ("Braden has satisfied the requirements of Article III because he has alleged actual injury to his own Plan account . . . fairly traceable to [defendants'] conduct . . . [and] likely to be redressed by a favorable judgment."

### B. Federal Arbitration Act

It is settled in the Third Circuit that "statutory ERISA claims are subject to arbitration under the [Federal Arbitration Act ("FAA")] when the parties have executed a valid arbitration agreement encompassing the claims at issue." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1112 n.1 (3d Cir. 1993). With the FAA, "Congress has instructed federal courts to enforce arbitration agreements according to their terms – including terms provided for individualized proceedings." *Epic Sys. Corp. v. Lewis*, - U.S.--, 138 S. Ct. 1612, 1621 (2018)). This ensures that arbitration agreements "are enforceable to the same extent as other contracts." *Puleo v. Chase Bank USA, NA.*, 605 F .3d 172, 178 (3d Cir. 2010).

When presented with an arbitration provision, this Court's task is to determine whether "a valid agreement to arbitrate exists between the parties and [whether] the specific dispute falls within the substantive scope of that agreement." *John Hancock Mut. Life Ins. Co. v. Glick*, 151 F.3d 132, 137 (3d Cir. 1998). When conducting this analysis, courts in the Third Circuit apply the standard for failure to state a claim under Rule 12(b)(6). *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) ("*Remicade*") (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019)). Although the Third Circuit has held that a district court lacks the authority to compel arbitration outside of its district, *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974), district courts may dismiss actions that are subject to arbitration elsewhere. *See, e.g.*, *Sanum Inv. Ltd. v. San Marco Capital Partners LLC*, 263 F. Supp. 3d 491,496-97 (D. Del. 2017).

### III. DISCUSSION

#### A. Plaintiff's Constitutional Standing

To have standing, Plaintiff "must assert facts that affirmatively and plausibly suggest" that he "has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012). That is, Plaintiff must identify a concrete and particularized injury with adequate specificity.

Defendants argue that Plaintiff lacks standing because he does not allege sufficient facts to support a plausible inference of harm. They assert that Plaintiff alleges that the ESOP "paid too much," but offers no facts to support that conclusion. The Court disagrees. Broadly read, Plaintiff's Complaint alleges sufficient facts. Specifically, Plaintiff alleges that he held BSC stock in his individual account in the Plan, has a vested interest in that stock, and the value of the stock in his account was diminished due to Defendants' ERISA violations in the stock purchase transaction that caused the Plan to pay too much for the stock and caused fewer shares to be allocated to Plaintiff. (*See* D.I. 2 ¶¶ 2, 3, 9, 10, 13, 37, 39, 45, 50, 70, 78, 99). These allegations, taken together and accepted as true, are sufficient to establish Plaintiff's standing.

#### B. The Plan's Arbitration Provisions

The Plan does not speak to whether a court or arbitrator should decide the scope of the Arbitration Provisions. Absent a clear delegation clause reserving scope determinations to the arbitrator, the Court must decide whether the claims in the Complaint are covered by an agreement to arbitrate. *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019). In doing so, the Court must consider two questions: "(1) 'whether the parties have a valid arbitration agreement at all' (i.e., its enforceability), and (2) 'whether a concededly binding arbitration clause applies to a

7

certain type of controversy' (i.e., its scope)." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019).

Here, Plaintiff does not dispute the second prong – that his claims are within the scope of the Arbitration Provisions. That leaves the first prong – whether the Arbitration Provisions are valid. As to that issue, there are two disputes (1) whether the Arbitration Provisions are invalid because Plaintiff did not agree to them and (2) whether the Class Action Waiver is invalid because it disallows plan-wide relief for claims under ERISA §502(a)(2) (29 U.S.C. §1132(a)(2)) and thus is "contrary congressional command."

### 1. Consent to the Arbitration Provisions

Henry argues that the arbitration provision is not valid because he never gave voluntary and knowing consent.[7] (D.I. 19 at 19). Under the FAA, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Defendants assert that Henry consented to the arbitration provision by continuing to remain employed at the Company after the provision was adopted. (D.I. 12 at 8-9).

The Court is mindful that an ERISA plan is a bilateral contract whereby participants agree to be bound by the terms of the plan document in exchange for receiving employer provided benefits and that "[t]he plan, in short, is at the center of ERISA." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013). It is "the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument.'" *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (quoting 29 U.S.C. § 1102(a)(1)). "[E]mployers or other plan sponsors are generally

---

[7] There is no dispute that ERISA claims are properly the subject of arbitration upon proper consent.

free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (citing *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir. 1990); *see also* 29 U.S.C. §§ 1102(a), (b). That being said, in the Third Circuit "[f]or a court to enter an order compelling arbitration there must be sufficient evidence that the parties consented to arbitration in an express agreement." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001). The Court is unaware of (and the parties have not cited to) any exception to this requirement in the context of arbitration of ERISA claims. Thus, absent Third Circuit authority, the Court is unwilling to conclude that the traditional contract analysis that governs whether there is an arbitration agreement is displaced in the context of ERISA plans.[8]

Defendants rely on the Ninth Circuit decision in *Dorman v. Charles Schwab* for its statement that "[a] plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect." 780 F. App'x 510, 512 (9th Cir. 2019). *Dorman*, however, provided no reasoning for its decision. Moreover, courts in the Third Circuit look to state law when determining whether the parties have a valid arbitration agreement. *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019). Defendants assert that the Plan is governed by Virginia state law and thus Virginia state law governs. (D.I. 12 at 7-8).

---

[8] Defendants argue that requiring notice and consent would deprive plan sponsors of the freedom to make necessary modifications and make impossible efficient administration of plans because it would risk creating innumerable individual benefit plans with distinct terms for each individual participant. Although the Court agrees that such out an outcome would be inconsistent with the goal of uniformity that Congress sought to implement with ERISA, Defendants argument seems overstated. Indeed the Court has little doubt that plan sponsors have found and will continue to find ways to provide some notice and obtain sufficient consent for arbitration provisions from those who wish to continue to participate in a particular plan.

9

"[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17 (1981); *see also Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007) (quoting *Valjar, Inc. v. Maritime Terminals, Inc.*, 265 S.E.2d 734, 737 (Va. 1980) ("A contract cannot exist if the parties never mutually assented to terms proposed by either.")). A manifestation of mutual assent may be made by words or conduct. Restatement (Second) of Contracts § 17 (1981). But "[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." Restatement (Second) of Contracts § 19 (1981); *see also Lacey v. Cardwell*, 217 S.E.2d 835, 843 (Va. 1975) ("'Both the offer and acceptance may be by word, act or conduct which evince the intention of the parties to contract.'" (quoting *Green's Ex'rs v. Smith*, 131 S.E. 846, 848, 146 Va. 442, 452 (Va. 1926)). Thus, Virginia state law requires that the party intend for his conduct to manifest assent. *See Lacey*, 217 S.E.2d at 843.

Here, Henry started employment at BSC in January 2012, before BSC adopted the ERISA plan in January 2015. (D.I. 15-1 ¶¶ 3, 13). It is unclear whether notice was provided to any of the Plan participants when the Plan later adopted the arbitration provision in 2017. Henry, however, asserts that the first time he learned of the arbitration clause was "after [he] filed this lawsuit." (D.I. 15-1 ¶ 6). He asserts that he was never asked to sign an agreement with BSC or anyone else regarding the arbitration clause. (D.I. 15-1 ¶ 6). He contends he also never received any notice about the arbitration clause around the time it was adopted (or ever). (*Id*. ¶ 5). The facts at this stage of proceedings plausibly support Henry's assertion that he did not have notice and therefore did not have the necessary intent to manifest assent.

### 2. Class Action Waiver

Having found that the Court cannot dismiss in favor of arbitration pending determination as to whether Plaintiff provided the requisite consent, the Class Action Waiver (which is part of the Arbitration Provision) also cannot be enforced at this time.[9]

## IV    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to a mandatory arbitration clause (D.I. 11) is DENIED. An appropriate order will follow.

---

[9] That being said, were consent established for the Arbitration Provision, Henry, as the party seeking a determination that the FAA enforcing the Class Action Waiver and ERISA "cannot be harmonized and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." *Epic*, 138 S. Ct. at 1614 (quoting *Vimar Seguros y Reaseguros, S.A., v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995) (internal quotation marks omitted)). Indeed, in *Epic*, the Supreme Court identified "many cases over many years" where it failed to find "a congressional command sufficient to displace the Arbitration Act" even in statutes that "expressly permitted collective legal actions" and "declared 'any waiver' of the rights provided to be 'void.'" *Id.* at 1628 (punctuation omitted). This suggests that very little will satisfy Henry's burden, except a clear and express command by Congress that an arbitration provision requiring a class action waiver is void. The Court cannot see that ERISA §§ 409(a) and 410(a) clear this hurdle.